UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X

KENJI HARPER and JENNY HARO,

              Plaintiffs,

   - against -

THE CITY OF NEW YORK, AHMED
ALLI, as Lieutenant, Internal Affairs
Bureau, NYPD DAVID GREEN,
Department Advocate, NYPD, Trial
Commissioner KARAPKIN, NYPD,
individually and in their official capacities as
employees of Defendant THE CITY OF
NEW YORK,

              Defendants.
------------------------------------------------------X

**OPINION AND ORDER**

**10 Civ. 7856 (SAS)**



USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 8/5/11

SHIRA A. SCHEINDLIN, U.S.D.J.:

## I.   INTRODUCTION

      Kenji Harper ("Harper") and Jenny Haro ("Haro"), bring this action

against the City of New York (the "City"), Department Advocate David Green

("Green")[1], and Lieutenant Ahmed Alli ("Alli") pursuant to 42 U.S.C. §§ 1981 and

---

      [1]     In Plaintiff's Opposition Memorandum to the Motion to Dismiss
("Opp. Mem."), plaintiffs withdrew all claims against Green. *See* Opp. Mem. at 2.
Therefore, this motion will only address the claims against the City and Alli. All
claims against Defendant Trial Commissioner Martin Karapkin were also
voluntarily dismissed with prejudice. *See* Docket Entry # 16.

1983, the New York State Human Rights Law ("NYSHRL")[2], and the New York City Human Rights Law("NYCHRL").[3]  Plaintiffs allege that their constitutional and statutory rights were violated as a result of racial discrimination, abuse of authority, and retaliation while working as police officers for the New York City Police Department ("NYPD").  Specifically, plaintiffs argue that they were discriminated against when they were denied the right to withdraw their guilty pleas to disciplinary charges brought against them by the NYPD.  Additionally, plaintiffs allege that the allegations behind the charges were motivated by racial discrimination.

Defendants now move to dismiss plaintiffs' claims pursuant to Federal Rule of Civil Procedure 12(b)(6) on the following grounds: (1) all claims against Alli are time-barred; and (2) failure to state a claim for which relief can be granted.  For the following reasons, defendants' motion to dismiss is granted.

## II.    BACKGROUND[4]

Haro, an Hispanic female, is a former officer of the NYPD.  Harper, an African-American male, is currently employed by the NYPD.  Both plaintiffs

---

[2]     New York Executive Law § 296.

[3]     NYC Administrative Code § 8-107.

[4]     The following facts are drawn from the Complaint ("Compl.") and are presumed to be true for purposes of this motion.

were assigned to the NYPD's Internal Affairs Bureau ("IAB") and were supervised by Alli during the relevant time period.[5]  Plaintiffs allege that defendants discriminated against minority officers by assigning them to specific units within the IAB.[6]  For instance, plaintiffs allege that defendants "intentionally assigned minority officers to the undercover unit within IAB, based only on race, rather than to more prestigious and less dangerous units."[7]  Plaintiffs allege that out of approximately thirty officers assigned to the undercover IAB unit, only three were Caucasians, while the rest were minorities.[8]

### A.    Haro's September 13, 2006 Charges and Specifications

On September 13, 2006, Haro was served with Charges and Specifications ("September 2006 Purse Charges") relating to an incident in which she filed a false report of a robbery.[9]  The Charges allege that Haro reported that she was robbed of her purse, which contained her Department shield, when, in fact, she left it unattended near an ATM machine.   The Charges were later amended on

---

[5]    Plaintiffs believe that Alli is of "Arabic national origin." Compl. § 14.

[6]    *See* Compl. ¶ 16.

[7]    *Id.* ¶ 17.

[8]    *See id.* ¶ 18.

[9]    *See id.* ¶ 53.  *See also* Defendants' Memorandum in Support of Defendants' Motion to Dismiss ("Def. Mem.") at 3.

July 2, 2007.[10]   Haro alleges that the Charges were retaliatory because she complained about the discriminatory actions of Alli.  Haro alleges that these Charges were brought after Alli initiated a separate set of Charges– described below in which both Harper and Haro were named.

###  B.   The December 7, 2006  Charges and Specifications

On July 7, 2006, plaintiffs were assigned to investigate allegations of serious misconduct against a former police officer.  Plaintiffs were equipped with a DINGO recording device as part of the investigation, which was provided to them by the City and Alli.[11]  Following the investigation, plaintiffs allege that Alli made "false allegations to the Internal Affairs Bureau that they attempted to compromise the investigation by erasing the recordings on the DINGO recording device."[12] Based on Alli's allegations, both plaintiffs were served with Charges and Specifications on December 7, 2006 ("December 2006 DINGO Charges"), for

---

[10]      *See* 6/13/06 Charges and 7/2/07 Amended Charges Against Haro ("Haro's 2006 Charges and 2007 Amendment"), Ex. A to Defendants' Memorandum in Support of Defendants' Motion to Dismiss (Def. Mem.).

[11]      *See* Compl. ¶ 22.

[12]      *Id.* ¶ 24.

serious misconduct.[13]  Plaintiffs allege that Alli made the false statements to the

IAB solely because of plaintiffs' race.

Plaintiffs were each represented by their own counsel after receiving

the December 2006 DINGO Charges.  Based on the advice of counsel, who

informed plaintiffs that the City had strong evidence to support the allegations of

misconduct, each plaintiff chose to plead guilty to avoid the unpredictability of

trial.[14]  Harper fully allocuted to the charges against him on August 14, 2007.

Haro fully allocuted to the charges against her on October 9, 2007.  On November

13, 2007, after plaintiffs pled guilty but before their guilty pleas had been accepted

by the Police Commissioner, plaintiffs had the opportunity to review their

confidential personnel files.[15]  Their review of the files revealed that Alli's

allegations were based on his receipt of an anonymous letter from a retired IAB

investigator.[16]  The anonymous letter accused plaintiffs of soliciting the assistance

of several detectives to have the "Technical Assistance Response Unit (TARU)

---

[13]     *See id.* ¶ 28.

[14]     *See id.* ¶¶ 31-32.

[15]     *See id.* ¶ 34.

[16]     *See id*. ¶ 36.

erase the DINGO recording device."[17]   Plaintiffs allege that this anonymous letter

was, in fact, written by Alli.[18]

On November 27, 2007,  plaintiffs, through new counsel, moved to

withdraw their guilty pleas and restore the matter for trial.   The Police

Commissioner had not yet accepted their guilty pleas when the motion to withdraw

was filed.   On June 19, 2008, the Department Advocate's Office opposed the

motion.  "Plaintiffs[] allege based upon the impressions and experiences in the trial

room of a reliable source that other similarly situated Caucasian police officers[']

motions were granted."[19]

Harper alleges that he was "transferred from an upwardly mobile

career track [in] which he was being primed for work in counter-intelligence."[20]

Harper believes his career opportunities were destroyed because of the December

2006 DINGO Charges and the discipline he received.  While awaiting the

adjudication of the December 2006 DINGO Charges against her, Haro was placed

on modified duty.[21]  Plaintiffs allege that they suffered "emotional distress,

---

[17]   *Id.* ¶ 38.

[18]   *See id.* ¶ 37.

[19]   Compl. ¶ 51.

[20]   *Id*. ¶ 56.

[21]   *See id*. ¶ 55.

monetary damage, loss of pension rights, and incurred medical and legal expenses, and out of pocket expenses for telephone, postage and other costs of pursuing the claims herein."[22]

### C.    Alleged Discriminatory Practices by Alli and the City

Plaintiffs allege that Alli "discriminated against the minority officers under his supervision, including but not limited to: treated the Caucasian officers in a preferential manner by assigning fewer cases to the Caucasian officers in the undercover unit which allowed them more time to complete investigations."[23] Plaintiffs further allege that the City and its agents have a long history of discriminating against minority officers, and more specifically, in giving assignments within the IAB based on race.[24]  They allege that minorities are more often assigned to the undercover unit than other units within the IAB.  They also allege that the City has a history of performing "flawed and unfair internal investigations of its minority officers."[25]   Plaintiffs argue that the "false" allegations by Alli were accepted "wholesale" by the City "without any or proper

---

[22]     Compl. ¶ 69.

[23]     *Id.* ¶ 18.

[24]     *See id.* ¶¶ 15-17.

[25]     *Id.* ¶ 20.

investigation" and that the City "knew or should have know that the charges were baseless and without merit because of the lack of investigation or proper investigation."[26]

## III.   LEGAL STANDARDS

### A.   Rule 12(b)(6) - Failure to State a Claim

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must evaluate the sufficiency of a complaint under the "two-pronged approach" promulgated by the Supreme Court in *Ashcroft v. Iqbal*.[27]  *First*, a court "'can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth.'"[28]  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice" to withstand a motion to dismiss.[29]  *Second*, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then

---

[26]     *Id.* ¶¶ 25-26.

[27]     556 U.S. —, 129 S. Ct. 1937, 1950 (2009).

[28]     *Hayden v. Paterson*, 594 F.3d 150, 161 (2d Cir. 2010) (quoting *Iqbal*, 129 S. Ct. at 1950).  *Accord Ruston v. Town Bd. for Town of Skaneateles*, 610 F.3d 55, 59 (2d Cir. 2010).

[29]     *Iqbal*, 129 S. Ct. at 1949 (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

determine whether they plausibly give rise to an entitlement for relief."[30]  To

survive a Rule 12(b)(6) motion to dismiss, the allegations in the complaint must

meet a standard of "plausibility."[31]  A claim is facially plausible "when the plaintiff

pleads factual content that allows the court to draw the reasonable inference that

the defendant is liable for the misconduct alleged."[32]  Plausibility "is not akin to a

probability requirement;" rather, plausibility requires "more than a sheer

possibility that a defendant has acted unlawfully."[33]

      "In considering a motion to dismiss for failure to state a claim

pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the

complaint, documents attached to the complaint as exhibits, and documents

incorporated by reference in the complaint."[34]  However, a court may also consider

a document, not incorporated by reference, "where the complaint 'relies heavily

---

[30]    *Id.* at 1950.  *Accord Kiobel v. Royal Dutch Petroleum Co.*, 621 F.3d 111, 124 (2d Cir. 2010).

[31]    *Twombly*, 550 U.S. at 564.

[32]    *Iqbal*, 129 S. Ct. at 1949 (quotation marks omitted).

[33]    *Id.* (quotation marks omitted).

[34]    *DiFolco v. MSNBC Cable L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

upon its terms and effect,' thereby rendering the document 'integral' to the complaint."[35]

**B.     Section 1983**

Section 1983 states, in relevant part, that

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

Section 1983 "does not create a federal right or benefit; it simply provides a mechanism for enforcing a right or benefit established elsewhere."[36] "The purpose of [section]1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to

---

[35]     *Id*. (quoting *Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006)). *Accord Global Network Commc'ns, Inc. v. City of N.Y.*, 458 F.3d 150, 156 (2d Cir. 2006).

[36]     *Morris-Hayes v. Board of Educ. of Chester Union Free Sch. Dist.*, 423 F.3d 153, 159 (2d Cir. 2005) (citing *Oklahoma City v. Tuttle*, 471 U.S. 808, 816 (1985)). *Accord  Gonzaga Univ. v. Doe*, 536 U.S. 273, 285 (2002) ("'[O]ne cannot go into court and claim a 'violation of § 1983' – for § 1983 by itself does not protect anyone against anything.") (quoting *Chapman v. Houston Welfare Rights Org.*, 441 U.S. 600, 617 (1979)).

victims if such deterrence fails."[37]   In order to state a claim under section 1983, a plaintiff must show that the conduct complained of was committed by a person or entity acting under color of state law, and that the conduct deprived a person of rights, privileges, or immunities secured by the Constitution.[38]

For a person deprived of a constitutional right to have recourse against a municipality under section 1983, he or she must show harm that results from an identified municipal "policy," "custom," or "practice."[39]   In other words, a municipality may not be found liable simply because one of its employees or agents is guilty of some wrongdoing.[40]   Moreover, a policy, custom, or practice cannot arise from a single instance of unconstitutional conduct by an employee of the municipality.[41]   The Supreme Court has emphasized that

> [i]t is not enough for a § 1983 plaintiff merely to identify conduct properly attributable to the municipality. The plaintiff must also

---

[37]     *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

[38]     *See Palmieri v. Lynch,* 932 F.3d 73, 78 (2d Cir. 2004).

[39]     *Monell v. New York City Dep't of Soc. Servs*., 436 U.S. 658, 691 (1978).

[40]     *See Board of County Comm'rs v. Brown*, 520 U.S. 397, 402 (1997).

[41]     *See Tuttle*, 471 U.S. at 831 (Brennan, J., concurring in part and concurring in the judgment) ("[T]o infer the existence of a city policy from the isolated misconduct of a single, low-level officer, and then to hold the city liable on the basis of that policy, would amount to permitting precisely the theory of strict *respondeat superior* liability rejected in *Monell*.").

demonstrate that, through its deliberate conduct, the municipality was the "moving force" behind the injury alleged. That is, a plaintiff must show that the municipal action was taken with the requisite degree of culpability and must demonstrate a direct causal link between the municipal action and the deprivation of federal rights.[42]

In the absence of an established written municipal policy, a plaintiff must prove that a municipal practice was so "'persistent or widespread' as to constitute 'a custom or usage with the force of law,'"[43] or that a practice or custom of subordinate employees was "so manifest as to imply the constructive acquiescence of senior policy-making officials."[44]

## C.    Section 1981

Section One of the Civil Rights Act of 1886 – colloquially known as Section 1981 – states in relevant part:

> All persons within the jurisdiction of the United States shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens.[45]

---

[42]    *Brown*, 520 U.S. at 404.

[43]    *Green v. City of New York*, 465 F.3d 65, 80 (2d Cir. 2006) (quoting *Patterson v. County of Oneida*, *N.Y.*, 375 F.3d 206, 226 (2d Cir. 2004)).

[44]    *Id.* (quoting *Sorlucco v. New York City Police Dep't*, 971 F.2d 864, 871 (2d Cir. 1992)).

[45]    42 U.S.C. § 1981(a).

"Only suits based on racial discrimination may be maintained under this statute."[46]

**D.    Employment Discrimination Based on Race: Section 1981, the NYSHRL, and the NYCHRL**

Employment discrimination claims brought under section 1981, the NYSHRL, and the NYCHRL are generally analyzed under the same evidentiary framework that applies to Title VII and ADEA claims.[47]  In order to state a prima facie case of race discrimination, a plaintiff must show that:  (1) he was a member of a protected class, (2) he was qualified for his position, (3) he suffered an adverse employment action, and (4) the circumstances of the adverse action give rise to an

---

[46]     *Lee v. Bolger*, 454 F. Supp. 226, 233 (S.D.N.Y. 1978). *Accord Mian v. Donaldson, Lufkin, & Jenrette Secs. Corp*., 7 F.3d 1085, 1087 (2d Cir. 1993) (per curiam) ("To establish a claim under § 1981, a plaintiff must allege ... [that] the plaintiff is a member of a racial minority [and] an intent to discriminate on the basis of race by the defendant . . . .").

[47]     *See Leibowitz v. Cornell Univ.*, 584 F.3d 487, 498 n.1 (2d Cir. 2009); *Patterson*, 375 F.3d at 225-27 (applying Title VII hostile work environment analysis to a hostile work environment claim under section 1981); *Brennan v. Metropolitan Opera Ass'n, Inc.*, 192 F.3d 310, 316-18 & n.2 (2d Cir. 1999) ("Employment discrimination claims brought under the NYSHRL are analyzed identically to claims under the ADEA and Title VII . . . .  The analysis of the hostile working environment theory of discrimination is the same under the ADEA as it is under Title VII."); *Lu v. Chase Inv. Servs. Corp.*, No. 07 Civ. 1256, 2009 WL 4670922, at *6-7 (S.D.N.Y. Dec. 9, 2009) (claims for racial discrimination under Section 1981 and New York law are analyzed under the same framework as Title VII claims).

inference of discrimination based on his membership in the protected class.[48]  The last element may be established, for example, by showing that a similarly situated person not in the protected class was treated more favorably than the plaintiff.[49]

### E.    Retaliation

To make out a prima facie case of retaliation, an employee must show that he was engaged in a protected activity and the employer was aware of that activity; that he suffered an adverse employment decision; and a causal connection between the protected activity and the adverse employment decision.[50]

> A plaintiff can demonstrate a causal connection (a) indirectly by showing that the protected activity was followed closely by discriminatory treatment; (b) indirectly through other evidence such as disparate treatment of fellow employees who engaged in similar conduct; or (c) directly through evidence of retaliatory animus.[51]

---

[48]    *See Leibowitz,* 584 F.3d at 498; *Lu,* 2009 WL 4670922, at *2.

[49]    *See Shumway v. United Parcel Serv.*, 118 F.3d 60, 63 (2d Cir. 1997).

[50]    *See Turner v. National R.R. Passenger Corp.,* 181 F. Supp. 2d 122,134 (N.D.N.Y. 2002)*.  Accord Taitt v. Chemical Bank*, 849 F.2d 775, 777 (2d Cir. 1988).

[51]    *Carr v. West LB Admin., Inc.*, 171 F. Supp. 2d 302, 309 (S.D.N.Y. 2001) (citing *DeCintio v. Westchester County Med. Ctr.*, 821 F.2d 111, 115 (2d Cir. 1987)).

-14-

If the plaintiff establishes the above elements, then the burden shifts to the defendants to show a legitimate, non-retaliatory reason for the alleged adverse employment action.[52]

### F.   Due Process

It is well settled that in considering a claimed deprivation of due process in an employment context, a two step inquiry is required.

> First, it must be determined whether a plaintiff has a property right in continued employment. Assuming a property right exists, a court then must determine if that right was deprived without due process of law. This leads to the second step of the inquiry; determining how much process the plaintiff was due and whether the constitutional minimum was afforded in the particular case.[53]

"The Supreme Court has held that the availability of a state remedy to challenge alleged deprivations of protectible liberty or property interests may defeat a litigant's procedural due process claim."[54]  "[F]ederal due process standards are

---

[52]      *See Butts v. New York City Dep't of Hous. Pres. & Dev.*, 307 Fed. App'x 596, 599 (2d Cir. 2009).  *Accord Catanzaro v. City of New York*, No. 10 Civ. 1825, 2011 WL 335648, at *7 (S.D.N.Y. Jan. 25, 2011).

[53]      *Whiting v. Incorporated Village of Old Brookville,* 8 F. Supp. 2d 202, 210 (E.D.N.Y. 1998) (internal citations omitted).

[54]      *Id.* (citing *Parratt v. Taylor*, 451 U.S. 527 (1981), overruled on other grounds by *Daniels v. Williams*, 474 U.S. 327, 330-31 (1986).

-15-

met when a public employee is afforded 'some kind of hearing' prior to
termination, followed by fuller post-termination proceedings."[55]

### G.    Statute of Limitations

The statute of limitations for an action under section 1983 is three
years.[56]  "Although federal law determines when a section 1983  claim accrues,
state tolling rules determine whether the limitations period has been tolled, unless
state tolling rules would 'defeat the goals' of section 1983."[57]  Violations of the
NYSHRL and NYCHRL are also governed by the three-year statute of
limitations.[58]  Under federal law, "the claim accrues when the plaintiff knows or
has reason to know of the harm."[59]

---

[55]        *Sindone v. Kelly*, 439 F. Supp. 2d 268, 277 (S.D.N.Y. 2006).

[56]        *See Patterson*, 375 F.3d at 225.

[57]         *Abbas v. Dixon*, 480 F.3d 636, 641 (2d Cir. 2007) (quoting *Pearl v. City of Long Beach*, 296 F.3d 76, 80 (2d Cir. 2002)).

[58]        *See Acosta v. Loews Corp.,* 276 A.D. 2d 214, 216 (1st Dep't 2000). *Accord Van Zant v. KLM Royal Dutch Airlines*, 80 F.3d 708, 714 (2d Cir. 1996); *Franklin v. City of New York*, No. 01 Civ.10574, 2003 WL 21511932, at *5 (S.D.N.Y. July 1, 2003).

[59]        *Washington v. County of Rockland*, 373 F.3d 310, 317 (2d Cir. 2004) (citing *Eagleston v. Guido*, 41 F.3d 865, 871 (2d Cir. 1994)).

In New York, claims under section 1981 have traditionally been subject to a three-year limitations period.[60]   However, Title 28 U.S.C. § 1658(a) provides a catch-all four-year statute of limitations for  civil actions arising under Acts of Congress passed after December 1, 1990.[61]   "The Civil Rights Act of 1991 added two subsections to section 1981.  Section 1981(b) now defines contractual formation and enforcement, protected by subsection (a), to include "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits privileges, terms, and conditions of the contractual relations."[62]   This section was added to protect against discriminatory actions that occur after a contract is formed.[63]   Therefore, in section 1981 cases that involve discriminatory conduct after a contract is formed, a four-year statute of limitations governs, provided that the claim was made possible by the post-1990 enactment.[64]

### H.    Leave to Amend Standard

---

[60]    *See Butts v. City of New York Dep't of Housing*, 990 F.2d 1397, 1412 (2d Cir. 1992).

[61]    *See Ortiz v. City of New York*, 755 F. Supp. 2d 399, 404 (E.D.N.Y. 2010).

[62]    28 U.S.C. § 1981(b).

[63]    *See Ortiz*, 755 F. Supp. 2d at 404.

[64]    *See id*. at 405.

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that other than amendments as a matter of course, "a party may amend its pleading only with the opposing party's written consent or with the court's leave."[65]  Although "[t]he Court should freely give leave when justice so requires,"[66] it is "within the sound discretion of the district court to grant or deny leave to amend."[67]  "When a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint."[68]  However, "it is well established that leave to amend a complaint need not be granted when amendment would be futile."[69]

## IV.  DISCUSSION

### A.  Claims Against Lieutenant Ahmed Alli Are Not Time-Barred

Defendants argue that all claims against Alli must be dismissed because they are time-barred.[70]  Plaintiffs allege that they were unaware of Alli's alleged false statements about them until they reviewed their confidential personnel

---

[65]   *Slayton v. American Express Co.*, 460 F.3d 215, 226 n.10 (2d Cir. 2006) (quotation marks omitted).

[66]   Fed. R. Civ. P. 15(a)(2).

[67]   *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

[68]   *Hayden v. County of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999).

[69]   *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003).

[70]   *See* Def. Mem. at 9.

-18-

files on November 13, 2007.   Because they filed their case on October 14, 2010,
plaintiffs argue that their claims against Alli fall within the three-year limitations
period and are not time-barred.[71]

    The statute of limitations accrues when plaintiffs knew, or should have
known, of the alleged harm.  However, there is a question as to when plaintiffs
should have known of the alleged harm.  It is possible that plaintiffs should have
know of the alleged harm when the disciplinary charges were brought.   If the
allegations behind the Charges were false, then plaintiffs may have known of the
alleged wrongdoing at the time the Charges were filed.  On the other hand, it is
plausible that plaintiffs were unaware of Alli's allegedly false statements when the
Charges were filed.  Plaintiffs could have been aware that the Charges against them
were false, without knowing of Alli's alleged discriminatory conduct.  Assuming
that plaintiffs did not and should not have known of the alleged harm until they
reviewed their confidential personnel files, the alleged harm would have accrued on
November 13, 2007, which falls within the statute of limitations.  Subect to further
discovery, I cannot conclude as a matter of law that the claims against Alli are time-
barred.

---

   [71]  Arguably, plaintiffs' section 1981 claims are subject to a four-year
statute of limitations.  Therefore, even if plaintiffs' failed to meet the three-year
limitations period, their section 1981 claim would not be time-barred.

### B.     Racial Discrimination by Alli

Plaintiffs allege that Alli discriminated against them based on their race by fabricating the anonymous note that led to the December 2006 Charges against them.  However, the only plausible adverse employment action against them was the decision by the NYPD Department Advocate's Office to deny their motions to withdraw their guilty pleas.  Because Alli was not involved in making that decision, he cannot be liable on that basis.  Even if Alli's alleged false statement to the IAB was itself an adverse employment action, there is no basis to conclude that Alli's conduct was motivated by racial bias.  While plaintiffs offer general allegations that Alli treated minorities unfairly by giving them more cases to investigate, plaintiffs do not specify that they personally were given more cases, much less establish that any such action was motivated by racial bias.  Accordingly, plaintiffs' race discrimination claim against Alli must be dismissed.

### C.     Retaliation Claim

Defendants argue that Haro fails to state a valid retaliation claim because the alleged retaliatory action occurred prior to the alleged protected activity.  Haro alleges that she was retaliated against after complaining about discriminatory treatment by Alli.  The alleged retaliation consisted of the September 2006 Purse Charges brought against her.  Haro alleges that after she complained

-20-

about the discriminatory treatment by Alli, including the December 2006 DINGO

Charges, she was subject to "false charges of engaging in conduct prejudicial to the

good order, efficiency or discipline of the Department when she reported, in good

faith, that she had been the victim of a robbery."[72]

       To sustain a retaliation claim, a plaintiff must show that she was

engaged in a protected activity, that she suffered an adverse employment action, and

a causal connection between the two.  Here, Haro alleges that the protected activity

was her complaints regarding Alli's discriminatory conduct.  However, plaintiff

must also allege that Alli knew of her complaints, which she fails to do.  Nor does

she specify the substance of her complaints, to whom she complained, or when she

complained.

       The only retaliatory treatment alleged by Haro is the September 2006

Purse Charges.  Plaintiff fails to show any causal link between the alleged protected

activity (i.e., her complaints) and the alleged adverse employment action (i.e., the

September 2006 Purse Charges).  To demonstrate causation, a plaintiff may rely on

the fact that "the protected activity was closely followed in time by the adverse

action."[73]  Here, however, the chronology of events does not support Haro's

---

[72]    *Id.* ¶ 53.

[73]    *Cifra v. General Electric Co*., 252 F.3d 205, 217 (2d Cir. 2001).

retaliation claim.  Haro claims that after complaining of discrimination, and after the December 2006 DINGO Charges were initiated, she was subjected to an additional set of Charges and Specifications.  The so-called additional set of Charges (the purse incident) were filed on September 13, 2006.[74]  However, the September 2006 Purse Charges, which are the basis for her retaliation claim, were filed *before* the December 2006 DINGO Charges were filed against her and Harper. Because the alleged retaliation occurred before plaintiff engaged in the alleged protected activity, plaintiff's retaliation claim must be dismissed.

### D.    "Abuse of Authority" Claim

Defendants seek to dismiss plaintiffs' procedural due process claim because plaintiffs had the opportunity for a post-deprivation remedy  –  namely, an Article 78 hearing.  Plaintiffs maintain that they were deprived of their due process rights because defendants knew, or should have known, that the allegations against them were false.  Plaintiffs further allege that there was a denial of due process because they were unable to review their confidential personnel files until after they pled guilty.

---

[74]    The September 2006 Charges and Specifications against Haro were later modified on July 2, 2007.  The modifications were only slight adjustments to the wording of the Specifications.  The seriousness of the allegations was not increased nor were additional charges filed.  *See* Haro's 2006 Charges and 2007 Amendment.

Plaintiffs fail to state a due process claim.  First, plaintiffs were represented throughout the disciplinary proceedings, had the right to discovery and a trial, and were afforded a hearing on their motions to withdraw their guilty pleas. Additionally, plaintiffs had the opportunity for an adequate and meaningful post-deprivation remedy to protect their due process rights, by bringing an Article 78 proceeding.[75]  Because plaintiffs failed to pursue an Article 78 hearing, their due process claim is dismissed.

### E.    Claims Against the City of New York

Defendants move to dismiss plaintiffs' *Monell* claim based on the absence of proof of an unconstitutional policy or practice.  Plaintiffs allege that there is a sufficient showing that there was an unwritten policy and practice directed at minority officers because only three of the thirty officers assigned to the undercover IAB unit were Caucasian.  They further allege that the Caucasian officers were treated in a preferential manner by the IAB unit and they were assigned fewer cases than the minority officers and were given more time to complete their investigations.  Finally, plaintiffs allege that similarly situated

---

[75]    *See Hellenic Am. Neighborhood Action Comm. v. City of New York*, 101 F.3d 877, 881 (2d Cir. 1996) (holding that the requirements of due process are satisfied by the availability of a post-deprivation remedy).

Caucasian officers were granted motions to withdraw guilty pleas while the plaintiffs were not.

Plaintiffs' allegations are insufficient to plead a *Monell* claim.  There cannot be a *Monell* claim in the absence of an underlying constitutional violation.  "The mere assertion . . . that a municipality has such a custom or policy is insufficient in the absence of allegations of fact tending to support, at least circumstantially, such an inference . . . ."[76]  There are no facts alleged in the complaint that support such an inference.   Mere conclusory allegations that plaintiffs were discriminated against based on their race is insufficient to state a claim.  Because plaintiffs' *Monell* claim is contingent on the existence of an independent constitutional violation, and this Court has dismissed all of plaintiffs' claims for violations of their constitutional rights, the claims against the City cannot be sustained.[77]  Therefore, defendants' motion to dismiss the *Monell* claim is granted.

### F.    Leave to Amend

In the instant action, I have dismissed plaintiffs' claims for failure to state a plausible claim.  Plaintiffs may amend their discrimination claims against

---

[76]      *Dwares v. City of New York*, 985 F.2d 94, 100 (2d Cir. 1993).

[77]      *See Lawrence v. City Cadillac*, No. 10 Civ. 3324, 2010 WL 5174209, at *2 (S.D.N.Y. Dec. 9, 2010).

Alli and the City to include additional specificity in order to state a plausible claim. If plaintiffs amend their claims against the City, they must sufficiently allege an unconstitutional custom or policy. Plaintiffs may not, however, amend their Complaint as to their retaliation and abuse of authority claims. Plaintiffs' retaliation claim cannot be cured because the alleged retaliation occurred before plaintiff engaged in the alleged protected activity. Plaintiffs' abuse of authority claim was denied because plaintiffs had the opportunity for a post-deprivation hearing. Therefore, amending the Complaint would be futile as to both claims.

Plaintiffs may amend their discrimination claims within 30 (thirty) days of the date of this ORDER.

## V.    CONCLUSION

For the foregoing reasons, defendants' motion to dismiss is granted as to all claims. The Clerk of the Court is directed to close this motion (Docket No. 16).

SO ORDERED:

Shira A. Scheindlin
U.S.D.J.

Dated: New York, New York
       August 5, 2011

-25-

**-Appearances-**

**For Plaintiffs:**

Susan P. Bernstein, Esq.
Jeffrey L. Goldberg, Esq.
Law Office of Jeffrey L. Goldberg, P.C.
2001 Marcus Avenue
Lake Success, NY 11042
(516) 775-9400

**For Defendants:**

Jane E. Anderson
Assistant Corporation Counsel
New York City Law Department
100 Church Street
New York, NY 10007
(212) 788-0870